TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00543-CR

NO. 03-09-00544-CR






Andrew Richard Burke III, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT

NOS. CR21,825 & CR21,941, HONORABLE ED MAGRE, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Andrew Richard Burke, III appeals from the court's revocation of his terms of
community supervision. Burke contends that the evidence was legally insufficient to support the
revocation. He also contends that the court erred by denying him time credit for successfully
completing a substance abuse felony punishment program. We affirm.

 Burke pleaded guilty to two counts of driving while intoxicated, third offense (or
more). See Tex. Penal Code Ann. § 49.04 (West 2003), § 49.09 (West Supp. 2009). He was
sentenced to ten years in prison, which was probated, and he was placed on community supervision
(probation) for ten years. One of the terms of his community supervision required him, after serving
a term of confinement and treatment in a substance abuse facility, to "participate in a drug or alcohol
abuse continuum of care treatment plan as developed by the Texas Commission on Alcohol and
Drug Abuse, abiding by all rules and regulations of said treatment plan until successfully discharged
by the staff of the care program." Burke was discharged from the continuum of care program for
failing to abide by its rules and regulations. The court revoked his community supervision and
imposed the sentence of ten years in prison.

 We review the revocation of community supervision for an abuse of discretion.
Rickels v. State, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). In determining questions
regarding sufficiency of the evidence in community supervision revocation cases, the burden of proof
is by a preponderance of the evidence. Id. We will affirm if the greater weight of the credible
evidence creates a reasonable belief that the defendant has violated a condition of his community
supervision. Id. at 764. If the State fails to meet its burden of proof, the trial court abuses its
discretion in revoking. Cardona v. State, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984).

 Burke's probation officer, Michelle Posten, testified that Burke completed his term
in his substance abuse felony punishment facility (SAFPF) successfully without any disciplinary
problems. He entered that program on June 19, 2008, and was discharged on April 29, 2009. He
then went to the Abode Treatment Center near Fort Worth.

 Abode's program manager, Sylvia Wagnon, testified that the center assists substance
abuse felons with re-entering society. The clients live in the center, but may leave on passes to seek
work, perform work, attend probation meetings, or perform other necessary tasks. Clients can also
obtain recreation passes for up to 48 hours. She testified that Burke was a 60-day client who entered
the program on April 29, 2009, and would have graduated on June 28, 2009. She testified that he
completed his required six hours of weekly therapy only in the first week. The remainder of his time
his attendance was essentially excused in favor of appointments at the county hospital.

 Wagnon testified that Burke had a 48-hour pass to leave the center on the weekend
of May 30-31, 2009. She testified that, although he was eligible only for a 24-hour pass, his
counselor had approved a 48-hour pass even though it lacked supporting documentation. Burke also
had signed a 72-hour pass that had supporting documentation. Based on the 48-hour pass, he should
have returned on May 31 at 4 p.m. He returned June 1, at 4 p.m. Wagnon acknowledged that Burke
contacted his counselor to request an extension, but testified that only she (Wagnon) can approve
extensions. She said that, although his counselor should have told him of that procedure, she did
not know if that occurred. Wagnon also testified that, upon his return, Burke tested positive for
alcohol--a violation of the center's rules. She said her logbook showed that his breath analysis
was positive for alcohol but his urinalysis was negative for other illegal drugs. She recalled that
his breath test showed a concentration of .02. Wagnon did not conduct the test herself. Wagnon
testified that Burke told her he had just brushed his teeth and rinsed his mouth out with Listerine.
As a result of his failing the test, the center stripped him of his freedoms, including leaving on
any pass including a work pass. He also was moved from a single room into a room shared with
other clients.

 Wagnon testified that on June 7, 2009, at 12:30 a.m., a shift supervisor reported
that she saw Burke weaving and stumbling down a hall in the center, showing signs of being
drunk including smelling of alcohol and slurring his speech. Two empty beer cans were found in
another client's backpack that Burke was seen "fiddling in." The next day, a search of his jacket
revealed another empty beer can of a similar type. Wagnon said that Burke denied drinking alcohol
and any responsibility for the beer. Wagnon described drunkenness and consumption of alcohol
as very serious violations of the center's regulations. Burke, however, tested negative on breath
and urine tests.

 Wagnon decided on June 9, 2009, to discharge him unsuccessfully. Posten, Burke's
probation officer, confirmed that she told Burke not to leave the center, that he would be picked up
by law enforcement and returned to Milam County. He nevertheless left the center on June 9, 2009.

 Tammy McKinney was Burke's primary counselor at Abode. She testified that
Burke was compliant with rules, participated in counseling, and did everything required. She
approved his 48-hour pass and, after learning from Ruby Byers, the outpatient coordinator, that
Burke wanted an extension to attend to his sick mother, she approved a 12-hour extension (although
the extension granted was apparently for 24 hours). McKinney testified that she did not know the
procedure for extensions, but that Byers told her that her verbal approval was sufficient. McKinney
testified that she approved the extension because of Burke's "wonderful" performance in the center. 
She testified that he was "constantly in contact" with her during the 72-hour period. She testified
that Mr. Sayeed (1) told her that Burke tested positive for alcohol. McKinney said she looked at the test
results and found that they were negative. McKinney testified that Sayeed requested an additional
test, but that Wagnon refused. She testified that Burke was searched upon his return on June 1 and
not allowed to leave during the next week. She testified that one of Burke's new roommates was
on a relapse track after using methamphetamine while at home on leave. She testified that the beer
attributed to Burke could have belonged to one of the other roommates. McKinney testified that she
was fired on June 7, 2009, prior to coming in to work.

 Burke testified that he asked for the extension on May 31 so he could accompany his
mother to the hospital when she went to have a stent examined. Burke testified that he talked to
Byers first, who told him to contact his primary counselor. He said he called his primary counselor
to get approval, and she granted approval conditioned on getting Byers's verbal approval. Burke
said that he saw paperwork showing that his breath test on June 1 showed negative for alcohol--not
positive. He said he requested a retest after hearing it reported as positive and, upon being denied
the retest, filed a grievance.

 Burke testified that he takes antidepressants and a strong sleeping pill at night. He
said he was told to report for testing late on June 6, which he passed, but that the sleeping pill would
explain why he was weaving and slurring his words. He testified that the beer cans were not his, that
they belonged to his roommates, some of whom were on relapse track.

 Burke called Posten, his probation officer, on June 17, 2009. Posten testified that she
told him that a warrant was out for his arrest and that he needed to turn himself in. She testified that
Burke told her he could not turn himself in for at least a week because he was in Atlanta, Georgia.
At trial, Burke admitted that he lied to Posten about being in Atlanta to stave off arrest. He said he
was working and trying to get enough money to hire an attorney. Burke was arrested on or about
June 26, 2009, in Rockdale, Texas. He testified that he had learned his lesson, had learned from the
treatment, and had no intention of "messing up" this last chance.

 The trial court concluded that the State proved that Burke violated the terms of
his community supervision as alleged, namely that he was unsuccessfully discharged from Abode
because he failed to abide by its rules and regulations.

 We find no abuse of discretion. Burke was undisputedly discharged unsuccessfully
from Abode on grounds that he failed to abide by its rules and regulations. As for the validity of the
charge that he failed to comply with Abode's rules and regulations, the trial court was faced with
conflicting evidence. It had to make a credibility choice, and evidently chose to believe Wagnon and
Posten. We cannot say that the choice is not supported by the record. With that implicit credibility
choice made, the preponderance of the evidence supports revocation. We cannot say that the
trial court abused its discretion by revoking Burke's term of community supervision.

 Burke next contends that the trial court erred by failing to give him credit for time
served at the SAFPF facility before he went to Abode. The relevant statute provides as follows:


 In all criminal cases the judge of the court in which the defendant is convicted shall
give the defendant credit on the defendant's sentence for the time that the defendant
has spent:


 . . . .


 (2) in a substance abuse treatment facility operated by the Texas Department
of Criminal Justice under Section 493.009, Government Code, or another
court-ordered residential program or facility as a condition of deferred
adjudication community supervision granted in the case if the defendant
successfully completes the treatment program at that facility.


Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (West Supp. 2009). Burke undisputedly successfully
completed his SAFPF program. He contends that he is entitled to credit for time served in the
TDCJ-run SAFPF. The State contends, however, that he is not eligible for credit because he was on
standard community supervision, and section 2(a)(2) of article 42.03 applies only to persons placed
on deferred adjudication community supervision.

 "When interpreting a statute, we look to the literal text of the statute for its meaning,
and we ordinarily give effect to that plain meaning, unless application of the statute's plain language
would lead to absurd consequences that the Legislature could not possibly have intended, or if the
plain language is ambiguous." Badgett v. State, 42 S.W.3d 136, 138 (Tex. Crim. App. 2001). When
the language of a statute is ambiguous, we may look to its legislative history as an aid in interpreting
the statute. See Tovar v. State, 978 S.W.2d 584, 586 (Tex. Crim. App. 1998).

 The statute does not make plain whether credit for time served may be granted to
defendants on standard or post-adjudication (not deferred adjudication) community supervision who
successfully complete a treatment program at a TDCJ-run SAFPF. Burke argues that Section 2(a)(2)
of article 42.03 should be read disjunctively to require giving credit for time served to defendants
on standard community supervision who successfully complete a treatment program at a TDCJ-run SAFPF. Under that reading, defendants on deferred-adjudication community supervision
who complete another court-ordered residential program or facility as a condition of community
supervision would be entitled to credit for time served. The State insists, however, that the
statute offers alternative means of earning good-time credit only to probationers whose adjudication
was deferred.

 The legislative history is not expressly dispositive. Two stated goals of the
statute--to give incentives to offenders to complete treatment programs and to ease overcrowding
in prisons (2)--are likely better served by granting credit to all types of probationers. The House
Research Organization's bill analysis, however, only contemplates that courts applying the statute
will extend credit to defendants who are on deferred-adjudication community supervision. (3) Other
statements in the house committee report are inconclusive. (4) The last sentence of the excerpt from
the House committee's bill analysis quoted in footnote 4 might be read to support extending credit
to all probationers where it states that "[t]his credit would also apply to defendants who successfully
completed the program while on community supervision, but were revoked and subsequently
required to serve time in a state jail felony facility or prison." House Comm. on Corrections,
Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007). In context, however, that statement follows
a sentence that expressly discusses only defendants who successfully complete a program as a
condition of their deferred-adjudication community supervision. Id. The limited scope of the
sentence that discusses only defendants whose adjudication is deferred may also implicitly color this
subsequent reference to defendants who complete a program while on "community supervision." 
See id.

 Although neither the language of the statute nor the bill analyses provides an
express answer, we conclude that the legislature intended to require courts to give credit for time
served only to defendants serving a term of deferred-adjudication community supervision. The bill
analyses are mostly inconclusive, but the one analysis to take a clear position--the House Research
Organization's analysis--does so in favor of the conjunctive reading that requires credit be given
only to defendants on community supervision whose adjudication was deferred. House Comm. on
Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007). While not expressly excluding
the grant of time credit to defendants on standard community supervision, the House Research
Organization does not mention that possibility. This interpretation is consistent with the somewhat
less strained reading of the statute. The conjunctive reading promoted by the State requires giving
credit for time served to deferred adjudication probationers only, but does so regardless of the type
of facility in which they serve their time. The disjunctive reading promoted by Burke requires giving
credit to standard probationers for time served in TDCJ-run facilities only, but allows deferred-adjudication community probationers to get credit regardless of the type of facility in which they
serve their time. Reading the statute as distinguishing among type of probationers to determine when
credit must be given is less of a strain than reading it as distinguishing among types of facilities--but
only for one type of probationer--to determine when credit is due. We conclude that the subsection
at issue permits giving credit for time served for successfully completing an SAFPF only to persons
serving deferred-adjudication probation. See Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a)(2).

 Affirmed.


 

 G. Alan Waldrop

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: June 25, 2010

Do Not Publish
1. McKinney did not testify regarding Mr. Sayeed's first name.
2. The fiscal note provides as follows:


 Several provisions of the bill would also specify conditions in which a judge shall
give a defendant credit on the defendant's sentence for the time that the defendant
has spent in jail or a substance abuse treatment facility, if the defendant successfully
completes the treatment program. These provisions could result in reduced time
served in correctional populations depending on the extent to which the provisions
are utilized; however such reductions are not included in this analysis.


Fiscal Note, Tex. H.B. 1678, 80th Leg., R.S. (2007).


The house committee wrote the following analysis:


 CSHB 1678 also aims to increase incentives for offenders to successfully complete
substance abuse programs and reduce the time offenders spend incarcerated by
requiring judges to give defendants credit for time served successfully completing a
treatment program in a Substance Abuse Felony Punishment Facility or other
court-ordered residential program or facility.


House Comm. on Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).
3. The house research organization's report provided as follows:


 CSHB 1678 would require judges to give defendants on probation as a condition of
deferred adjudication credit against their sentences for time spent in a substance
abuse treatment facility or another court-ordered residential program or facility if
they had successfully completed the program. To defendants whose probation was
revoked, judges also would have to give credit for time spent in the same facilities
if the defendant successfully completed the program.


House Research Organization, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).
4. The house committee on corrections provided the following analysis:


 This bill provides that a judge shall grant certain defendants credit on their sentence
for the time that they spent in a Substance Abuse Felony Punishment Facility
(SAFPF) or other court-ordered residential program or facility if they successfully
completed the treatment program at that facility. This credit would apply to
defendants who successfully completed the program as a condition of deferred
adjudication community supervision between the time they were granted deferred
adjudication and their sentence, regardless if the defendant is to be sentenced to
prison or a state jail felony facility. This credit would also apply to defendants who
successfully completed the program while on community supervision, but were
revoked and subsequently required to serve time in a state jail felony facility or
prison.


House Comm. on Corrections, Bill Analysis, Tex. H.B. 1678, 80th Leg., R.S. (2007).